IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RONNIE REDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 321-041 |
| | ) | |
| ANTONIO CALDWELL, Warden; | ) | |
| MR. GIBBONS, Deputy Warden of Security; | ) | |
| MS. DOE, Deputy Warden of Care and | ) | |
| Treatment; CHABARA BRAGG, Unit | ) | |
| Manager; LT. MITCHELL HARDY, Shift | ) | |
| Supervisor; and MRS. GORDON, | ) | |
| Correctional Officer II, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently detained at Charles B. Webster Detention Center, filed this case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    SCREENING THE AMENDED COMPLAINT**

    **A.    BACKGROUND**

Plaintiff names the following Defendants at JSP: (1) Antonio Caldwell, Warden; (2) Mr. Gibbons, Deputy Warden of Security; (3) Ms. Doe, Deputy Warden of Care and Treatment; (4)

Chabara Bragg, Unit Manager; (5) Lt. Mitchell Hardy, Shift Supervisor; and (6) Mrs. Gordon, Correctional Officer II. (Doc. no. 10, pp. 1-3, 12.) Plaintiff sues Defendants in their individual and official capacities. (Id.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On October 10, 2020, Plaintiff's H-2 dormitory was placed on emergency lockdown because of a gang stabbing. (Id. at 13.) The next day, the Warden, Deputy Wardens, and Unit Manager failed to make sure Defendant Hardy, the shift supervisor, had an officer assigned to the H-2 dorm. (Id.) Defendant Gordon, who had been assigned to H-1 dorm, came to H-2 dorm at 9:00 a.m. to pass out breakfast trays, and after she left, Plaintiff's cell mate "popped out" the celldoor lock to go visit the cells of other gang members. (Id. at 14.)

Defendant Gordon came back two hours later to pass out lunch trays and saw inmates were out of their cells. (Id. at 15.) She announced that "inmates better talk to their cellmates about 'popping out' their cells cause if they did not stop doing so she will alert 'the folks' (meaning her superiors) and some inmates may lose their illegal cell phones and drugs [sic]." (Id.) The Warden, Deputy Wardens, Unit Manager, and shift supervisor for October 11th "all knew of the daily occurrence of inmates 'popping in' and 'popping out' their locked cells using 'homemade keys' to do so" but failed to have the locks and unauthorized areas "nonbreachable by inmates." (Id. at 14.)

Defendant Gordon did not report to her supervisors that the inmates were out of their cells, and later that day, Plaintiff's cellmate attacked him by hitting him in the face with a lock tied to a belt and then stabbing him with a knife obtained when the cellmate "popped out" of his cell. (Id. at 14, 15-16.) Plaintiff's cellmate attacked him with the lock inside their cell, and the fight spilled

2

out into the top range, where - after Plaintiff had been repeatedly stabbed - other inmates eventually broke up the fight. (Id. at 16.) Minutes later, Defendant Gordon came to H-2 dorm from H-1 dorm and made sure Plaintiff was taken to the medical unit. Defendant Hardy sent an officer to secure the H-2 dorm. (Id. at 17.)

This was not Plaintiff's cellmate's first assault on a fellow inmate. In "early 2020," the cellmate attacked another inmate. (Id. at 5.) However, "the wardens" failed to follow a procedure that would have resulted in the cellmate's placement on nine months of lockdown. (Id. at 5, 13.) Moreover, as Plaintiff was a LGBTQ inmate and non-gang-member, he was considered "prey" to the gang-member cellmate. (Id. at 13.)

As relief, Plaintiff seeks monetary damages, as well has his costs of the litigation, from each Defendant. (Id. at 5.)

**B.    DISCUSSION**

**1. Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the

allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Does Not State a Failure to Protect Claim Against Defendants Caldwell, Gibbons, Doe, Bragg, or Mitchell

A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994)

4

(citations omitted).  Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates.  Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).  When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*).  However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012.  "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment.  Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34).  To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted).  These three elements are evaluated in part by an objective standard and in part by a

5

subjective standard.  See Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (*per curiam*).

As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard.  The second element—the defendant's deliberate indifference to that risk—has two components:  one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal citations and quotations omitted).

Mere negligent failure to protect and inmate from an attack does not justify § 1983 liability.  Brown, 894 F.2d at 1537.  Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Plaintiff has not alleged Defendants Caldwell, Gibbons, Doe, Bragg, or Mitchell consciously disregarded a serious and imminent risk to Plaintiff from his cellmate.  First, to the extent the cellmate attacked another inmate in "early 2020," (doc. no. 10, p. 5), Plaintiff does not provide any details of the attack or explain how, or even if, each Defendant was aware of the attack or that the attack was in any way related to Plaintiff.  Nor does Plaintiff allege

any attack on him or threat made toward him prior to the October 11th assault.  General knowledge of the cellmate's violent history is not sufficient.  Cf. Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (*per curiam*) (requiring "much more than mere awareness" of an inmate's "generally problematic nature" to impose liability for failing to protect against attack).  Also insufficient is the allegation Defendants are generally aware of Plaintiff's status as an LGBTQ inmate and non-gang-member.  Likewise, these five Defendants' general awareness that inmates would sometimes leave their cells or cell locks were not always fail safe is insufficient to establish any Defendant was deliberately indifferent to a substantial risk of serious harm or were aware Plaintiff was at substantial risk of attack.  See Williams v. Beasley, No. CV 320-057, 2021 WL 1573070, at *4 (S.D. Ga. Mar. 26, 2021), *adopted by*, 2021 WL 1566077 (S.D. Ga. Apr. 21, 2021) (Bowen, J.)  To the extent Plaintiff alleges Defendant Gordon knew on the day of the attack the inmates were out of their cells during an emergency lockdown and did not report it to her supervisors, the Court allows that claim to proceed as explained in a separate order.

Second, Plaintiff cannot hold these five Defendants liable by virtue of their supervisory positions.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer

7

which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold these five Defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff appears to name these individuals as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions. Nowhere does Plaintiff allege these five were present for, or participated in, the substantive events about which Plaintiff complains: the October 11th attack or allowing the inmates to "pop out" of their cells during an emergency lockdown. Nor does Plaintiff allege any of these five Defendants participated in the decision to assign Plaintiff's cellmate. At best, Plaintiff repeats the conclusory phrase that these supervisors "failed to protect me."[1] (See, e.g., doc. no. 10, pp. 4, 12.)

---

[1] To the extent Plaintiff contends some unnamed warden failed, months prior, to follow a prison regulation regarding housing assignments for inmates charge with assault, even if he had named a Defendant as the responsible party, an allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a § 1983 claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations "are primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (district court properly dismissed prisoner's claim

Therefore, Plaintiff must allege a causal connection between these Defendant and the asserted constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"  Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection.  Nothing in his amended complaint indicates Defendants were responsible for a policy or custom resulting

---

concerning prison officials' alleged failure to follow prison procedures with respect to grievances); Taylor v. White, CV 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *adopted by* 2012 WL 403849 (S.D. Ala. Feb. 7, 2012); Jones v. Schofield, 1:08-CV-7 WLS, 2009 WL 902154, at *3 (M.D. Ga. Mar. 30, 2009) ("Prison regulations and Standard Operating Procedures do not confer federal rights to prisoners that may be enforced or redressed in a § 1983 action.").

in a violation of Plaintiff's rights. Plaintiff's implicit suggestion that Defendants allowed or otherwise tacitly authorized the conduct of subordinates via customs and practices of allowing inmates to "pop out" of their cells is insufficient because he offers no facts to support this conclusory assertion. See Anderson v. Hall, Civ. Act. No. 5:19-cv-6, 2020 WL 2896682, at *2 (S.D. Ga. May 29, 2020) (dismissing claim for liability of supervisory prison officials where no facts alleged in support of causal connection allegations), *adopted by*, 2020 WL 3406329 (S.D. Ga. June 19, 2020). Nor does Plaintiff allege any facts to show they either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner. Indeed, Plaintiff states his entire dorm was on an emergency lockdown, which suggests no one would be allowed out of their cells. Plaintiff alleges only Defendant Gordon knew the inmates were not where they were supposed to be and specifically states she failed to notify any supervisor, which would include the supervisory Defendants.

In sum, Plaintiff has not shown Defendants Caldwell, Gibbons, Doe, Bragg, or Mitchell actually participated in the alleged constitutional violations; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against them based on their positions as supervisors.

### 3. Official Capacity Monetary Damages

To the extent Plaintiff is suing Defendants in their official capacities, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

## II. CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted against Defendants Caldwell, Gibbons, Doe, Bragg, or Mitchell, and the Court **REPORTS** and **RECOMMENDS** these five Defendants, along with Plaintiff's official capacity claims for money damages against all Defendants, be dismissed from the case. By separate Order, the Court directs service of process on Defendant Gordon.

SO REPORTED and RECOMMENDED this 24th day of September, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA